**Douglas W. KIRKLEY, Plaintiff**

v.

**LIFE INVESTORS INSURANCE COMPANY OF AMERICA, Defendant.**

**Civil Action No. 3:07–CV–0766–N.**

United States District Court, N.D. Texas, Dallas Division.

Jan. 24, 2008.

J. David Apple, Apple Norris & Fink, Coppell, TX, for Plaintiff.

Jeffrey Jack Wolf, Wolf + Law PC, Southlake, TX, for Defendant.

## ORDER

DAVID C. GODBEY, District Judge.

This Order addresses Defendant Life Investors Insurance Company of America's ("Life Investors") motion for summary judgment [10] and motion for leave to file supplemental briefing [20]. The Court denies the motion for leave to file supplemental briefing. Because there is no genuine issue of material fact as to whether Life Investors abused its discretion when it found that Autumn Leaves did not substantially comply with the definition of "Nursing Home," the Court grants Life Investors's motion.

### I. THE POLICY FOR NURSING HOME COVERAGE

Newellyn P. King purchased a "Nursing Home Only Insurance Policy" (the "Policy") from Life Investors. *See* Life Investors' Appendix at 12. King has passed away and Douglas W. Kirkley, her son and estate representative, brings this action. Kirkley alleges that the Policy covered King's stay at Autumn Leaves, an assisted living facility. Kirkley believes that Life Investors has wrongfully denied coverage.

The Policy covers stays in "Nursing Homes" as that term is defined by the Policy. Both parties agree that Autumn Leaves is not a "Nursing Home." Instead, Kirkley argues that a separate clause afforded King coverage. That clause states: "Benefits may be paid for a confinement in a facility that is not in full compliance with the Nursing Home definition, if Our Personal Care Advisor agrees that the facility substantially complies." *See* Life Investors' Appendix at 19. Life Investors points out that the clause is permissive, that Kirkley did not purchase the "Home & Community Care Benefits" that would have expanded the Policy's coverage to include assisted living facilities, *Id.* at 10, 81, and that the Policy also states that "[the insured] always [has] the right to request payment for services not listed in the Policy and [Life Investors has] the absolute descretion [sic] to pay or deny the claim." *Id.* at 29. Kirkley argues that Life Investors abused its discretion[1] in determining that Autumn Leaves did not "substantially comply" with the Policy's definition of "Nursing Home."

### II. LIFE INVESTORS DID NOT ABUSE ITS DISCRETION

The Policy defines "Nursing Home" as a facility which:

(1) is licensed by the state as a nursing home; and (2) is engaged in providing, in addition to room and board ac-

---

1. The Court hesitates in applying the "abuse of discretion" standard. This case is not controlled by the federal courts' ERISA jurisprudence that calls for review of certain benefit decisions for abuse of discretion. *See, e.g., Corry v. Liberty Life Assur.,* 499 F.3d 389, 397 (5th Cir.2007). It is therefore possible to understand the Policy as precluding judicial review of Life Investors's decision to deny coverage under a "Nursing Home Only Insurance Policy" for stay in a facility that Kirkley admits is not a "Nursing Home." *See Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994) ("Interpretation of insurance contracts in Texas is governed by the same rules as interpretation of other contracts."); *Lewis v. Vitol, S.A.,* 2006 WL 1767138, at *4–5 (Tex. App.-Houston [1st Dist.] 2006, no pet.) (contract providing for bonus at "sole discretion" of employer provides no judicially enforceable contractual right); *but see Zep. Mfg. Co. v. Harthcock,* 824 S.W.2d 654, 658–59 (Tex. App.-Dallas 1992, no writ) (contract permitting president of employer to discharge employee if in his sole discretion he determines performance is unsatisfactory includes obligation of good faith and determination cannot be arbitrary). Nonetheless, Life Investors agrees that the Court should review its denial of coverage for abuse of discretion. *See* Life Investors' Reply at 2. The Court proceeds accordingly.

commodations, nursing care and related services on a continuing inpatient basis; and (3) provides, on a formal prearranged basis, a Nurse who is on duty or on call at all times; and (4) has a planned program of policies and procedures developed with the advice of, and periodically reviewed by, at least one Physician; and (5) maintains a clinical record of each patient.... It is not a retirement home or community living center, nor is it a place that is primarily used for rest; for the care or treatment of mental diseases or disorders, drug addiction, or alcoholism; for day care or for educational care.

Life Investors' Appendix at 18–19.

Life Investors did not abuse its discretion in determining that Autumn Leaves was not in substantial compliance with the definition of "Nursing Home." Arguing otherwise, Kirkley focuses on requirements two through five, straining to show that Autumn Leaves satisfied those requirements. The Court need not decide whether those efforts are ultimately successful; Autumn Leaves was clearly not "licensed by [Texas] as a nursing home," and Autumn Leaves's deficiencies on that issue were significant enough that Life Investors did not abuse its discretion in deciding that the facility was not in substantial compliance with the "Nursing Home" definition.

Autumn Leaves clearly fails Texas's licensing standards for nursing homes. It is not as if Autumn Leaves missed Texas's standards by a technicality (e.g., was denied a license for failure to file the proper paperwork), in which case Kirkley would have a strong argument that Autumn Leaves substantially complies with the def-

inition of "Nursing Home." Instead, Autumn Leaves was licensed as an "assisted living facility" as regulated under Texas law, a facility that is "not authorize[d] ... to provide ongoing services comparable to the services available in [a nursing home] licensed under Chapter 242." TEX. HEALTH & SAFETY CODE § 247.067(b). Nursing homes and assisted living facilities are subject to significantly different and often conflicting regulations. *Compare* TEX. HEALTH & SAFETY CODE § 242 and TEX. HEALTH & SAFETY CODE § 247. There is no evidence or suggestion that Autumn Leaves was, in violation of the law, acting as a nursing home while licensed as an assisted living facility. Accordingly, the Court finds that Life Investors did not abuse its discretion in determining that Autumn Leaves did not substantially comply with the definition of "Nursing Home."[2]

## CONCLUSION

There is no genuine issue of material fact as to whether Life Investors abused its discretion when it decided that Autumn Leaves was not in substantial compliance with the "Nursing Home" definition. Accordingly, the Court grants Life Investors's motion for summary judgment.

## *FINAL JUDGMENT*

By separate Order of this same date, the Court has granted Defendant Life Investors Insurance Company of America's ("Life Investors") motion for summary judgment. Accordingly, it is ordered that Plaintiff Douglas W. Kirkley take nothing by his claims against Life Investors and that those claims are dismissed with prejudice. Court costs are taxed against Kirk-

---

**2.** Kirkley also claims that Life Investors did not conduct an adequate investigation before determining that Autumn leaves did not substantially comply. Kirkley argues that Life Investors should have sent a representative to

Autumn Leaves. The Court can find no reasonable interpretation of the contract that would require Life Investors to undertake the investigation requested by Kirkley.

ley. All relief not expressly granted is denied. This is a final judgment.